FINDLEY *v.* THE PEOPLE.

A plea in abatement to an indictment, that states several distinct facts having no relation to, or dependence upon each other, is bad for duplicity.

A plea in abatement should be certain to every intent, and conclude by praying judgment of the indictment and that it may be quashed, and must be verified by affidavit.

Where the grand jury have finished their business and been dismissed before the adjournment of the court without day, they may be re-summoned at any time during the term, to inquire into an offence committed subsequently to their discharge; and grand jurors who were originally summoned, but did not appear and act with their fellows before they were dismissed, may be re-summoned, and

Findley *v.* The People.

on appearing and being sworn and empanneled, may act with them on their second convocation.

A grand juror who appears after the jury have been sworn and received the charge of the court, may or may not be sworn, in the discretion of the court, where there are enough grand jurors without him.

It is not error for the court, after the jury have retired to consult of their verdict, to permit them, on their request, to have the Revised Statutes in their room, although the same is objected to by the prisoner's counsel.

ERROR to Oakland Circuit Court. Indictment for murder.

*T. J. Drake,* for Findley.

*Stevens, prosecuting attorney,* for the People.

*By the court,* MUNDY, J. On the 8th of January, 1848, it being an adjourned day of the September term, 1847, of the circuit court for the county of Oakland, Findley, the plaintiff in error, was indicted for the murder of Simpson Buck. Upon his arraignment, he pleaded not guilty; but was afterwards permitted by the court to withdraw that plea; whereupon he put in the following plea in abatement: "And the said John Findley comes, &c., and says, that the said bill of indictment ought not to be had, or further prosecuted against the said John Findley, because the said bill of indictment was not found by the grand jury inquiring in and for the body of the county of Oakland, at the September term of the circuit court for said county, in the year A. D. 1847; but that the said bill of indictment was found by a body of men claiming to be the grand jurors of the people of the state of Michigan, inquiring in and for the body of the said county, on the 8th day of January, A. D. 1848; and that on the said 8th day of January, A. D. 1848, after the said body of men were sworn and charged by the court, and were retiring, one Henry Barber, who was of and belonged to the grand jurors of the people of the state of Michigan, inquiring in and for the body of the county of Oakland aforesaid, appeared in said circuit court and desired to be assembled and convened with the said body of men, who found the said bill of indictment, before the said body of men had retired to consult upon the said bill; and the said Henry Barber was, on the said 8th day of January, 1848, and before the finding of the said bill, rejected and prohibited by the said circuit court, with-

out any legal or justifiable cause, from assembling or convening with the said body of men, claiming to be grand jurors as aforesaid, and by whom the said bill of indictment was found; and this the said John Findley is ready to verify, &c. And the said John Findley further saith, that the said bill of indictment ought not to be had or further prosecuted against him, the said John Findley, because the said bill of indictment was found against him, the said John Findley, by a body of men claiming to be the grand jurors of the people of the state of Michigan, inquiring in and for the body of the county of Oakland, at the September term of the circuit court for the said county, in the year A. D. 1847, of and among which said body of men was one William B. Hibbard and one Peter Richardson, who had been originally drawn and summoned as grand jurors, and who were not sworn as such, which said William B. Hibbard and the said Peter Richardson were not of and did not belong to the grand jurors of the people of the state of Michigan, inquiring in and for the body of the county of Oakland, at the September term of said circuit court for the year A. D. 1847; and this the said John Findley is ready to verify."

This plea upon demurrer was adjudged to be bad. It was obviously bad on several grounds. 1. On the ground of duplicity: it states several distinct facts, having no relation to or dependence upon each other—as, that Henry Barber was improperly rejected by the court from serving upon the grand jury, and that Hibbard and Richardson were improperly empanneled upon that jury. There is also a great disregard of precision and accuracy, if there is not repugnancy in its statements. A plea in abatement should be certain to every intent, and be pleaded without any repugnancy. 1 Chitty's Pl. 492. It should also have a proper conclusion, praying judgment of the indictment and that it may be quashed. 1 Chitty's Crim. L. 449. It is said, in 1 Chitty's Pl. 496, "great accuracy is necessary in the form of all pleas in abatement, as well in the *commencement* as in the *conclusion*, for it is said '*they make the plea.*' A plea which concluded with praying judgment 'if' (instead of 'of') the plaintiff's bill, was held bad on demurrer, though the words 'and that the same may be quashed,' were also added."

To this plea there is no prayer of judgment. The plea is not verified by affidavit. Section 33, chapter 164 of the Revised Statutes provides, that "no plea in abatement, or other dilatory plea to the in-

dictment, shall be received by any court, unless the party offering such plea shall prove the truth thereof by affidavit, or by some other evidence." Without such proof, it is no plea—a mere nullity. 3 Burr, 1617; 2 Stra. 1161; 2 Barn. & Cress. 618.

But we are all of opinion that the grand jury was properly constituted. These are the facts of the case: the grand jurors summoned at the September term, having finished the business before them, were dismissed by the court; afterwards, and before the adjournment of the court for the term, the crime for which the defendant was indicted was committed. At the common law it would have been competent for the court to have commanded another grand jury to be summoned and sworn. 2 Hale 156; 1 Chitty's Crim. L. 314. Our Revised Statutes, sec. 11, chap. 164, provide that, "when the grand jury attending any court shall have been dismissed before the court is adjourned without day, they may be summoned to attend again, in the same term, at such time as the court shall direct, and for the despatch of any business that may come before them."

Hibbard and Richardson, though belonging upon the list of grand jurors drawn and summoned to attend the September term of the court, for some reason, and it matters not what, were not at the commencement of the term sworn and empanneled; when the event had occurred which made proper the convocation a second time of the grand jury, they, with the others named in the grand jury list, were summoned, and appearing were sworn, and with the others empanneled. We do not see upon what principle it can be said, that these two persons were not qualified grand jurors, *probi et legales homines.* It is said that they were not sworn at the commencement of the term; and though grand jurors, that they did not belong to the grand jury inquiring in and for the body of the county of Oakland. If they had not been dismissed for the term, it would have been competent for the court at any time before the panel had been dismissed, upon their coming into court, to have sworn them, and sent them to their fellows. It has been very usual to do this when delinquent jurors have come in on the same day, after the jury have been sworn and charged. If it may be done that day, it may be done at any time during the session of the grand jury. It is a matter entirely in the discretion of the court; and circumstances, as the absence of a part of those empanneled, from sick-

ness, or other cause, might make its exercise very proper. There are in the statute no words of limitation, confining the jurors to be reassembled, to those only who had at first been sworn, and performed the duties of grand jurors, by inquiring in and for the body of the county, into the crimes and misdemeanors committed therein.

Barber, who had been re-summoned with the others, did not appear until after the jury had been sworn and received the charge of the court; and, as is very frequently the case, there being enough without him, he was not sworn. This we consider to be a matter of discretion with the court, and, as we have already said, a usual practice, not only in this country, but in England. 1 Chitty's Crim. L. 313.

After the petit jury had received the charge of the court and retired to consider of their verdict, they sent for and were permitted by the court, against the wishes of the defendant, to have in their room a copy of the Revised Statutes. For this reason a new trial was moved for, and by the court denied; and this matter coming up, upon a bill of exceptions, is assigned for error.

In the sending for and receiving of this book, the jury were guilty of no misbehavior; and it is difficult to conceive how any use which they may have made of it could have injured the defendant. In the application of the law as given in charge to them by the court, the statute book, defining as it does the offence, and declaring it murder in the first or second degree, according to the mode and the circumstances of its perpetration, may have been to them a just and useful guide; the more so as it was their duty to ascertain, in their verdict, whether it be murder of the first or second degree.

If the jury, without the knowledge or approbation of the court, had procured this book, it would not, we think, be a sufficient cause for setting aside the verdict. Juries may, without the assent of the parties, take with them into their room, papers under seal which have been read in evidence; other papers and books which have been given in evidence, they have no right to take; but if they do take them, though it may be misbehaviour in them, it will not set aside the verdict. Co. Litt. 227 b.

In the case of the Commonwealth v. Jenkins, Thatcher's Crim. Cas. 108, it was held, that where the officer in attendance delivered to the jury at their request, without application to the court, after they had

retired to consult upon a verdict, a volume of the laws of the state, containing the act upon which the indictment was founded, which act had been commented upon by the counsel and court, that this was not a sufficient ground for a new trial.

In another case, 7 Mo. R. 607, it is said that a jury ought not to be permitted to carry out law books with them, unless for the sake of referring to the law as stated in a paragraph marked out for them. Hardy v. State. While we think there was no error in this case, in the permission given by the court, that the jury might have a copy of the Revised Statutes, we are fully satisfied that the view taken of this matter by Lord Tenterden, 3 Carr. and Payne 310, is the correct one, and ought to be followed. After his lordship had summed up the case, and the jury had retired, they sent a message to his lordship, desiring to have Selwyn's Law of Nisi Prius sent them. His lordship, although both parties consented, said, the regular way is for the jury to come into court and receive the law from the court, and for the sake of precedent that course should be adopted now.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*