SHANNON *vs.* THE PEOPLE.

———•◦•———

## Albert F. Shannon vs. The People.

The statute in reference to exceptions in civil causes, takes up exceptions in criminal causes where they are left by Chap. 166 of the Revised Statutes (*Compiled Laws, Chap.* 197), and applies to them where that chapter is silent.

And, therefore, a bill of exceptions in a criminal case, being signed by the judge and filed with the clerk, becomes, when the case is brought into the Supreme Court by writ of error, a part of the record for review in that Court.

*Heard January 6th. Decided May 8th.*

SHANNON vs. THE PEOPLE.

Motion made at the last January Term to dismiss the exceptions accompanying the return to the writ of error; and held under advisement to this time. The grounds of the motion, and the provisions of the statute upon which it is based, are fully stated and considered in the opinion of the Court.

*J. M. Howard, Attorney General* for the motion.

*A. L. Millerd,* for defendant.

CHRISTIANCY J.:

This cause comes before this Court by writ of error. Exceptions were taken in the Court below by the plaintiff in error, under Chap. 166, R. S. of 1846 *(Compiled Laws of 1857, Chap.* 197). The Court below, disregarding the exceptions, sentenced the prisoner; a writ of error was duly issued from this Court, and the Court below, by its clerk, in return to the writ of error, has sent up the transcript of the record, including the bill of exceptions, as in civil cases. Errors are assigned upon the record proper, and upon matters appearing in the bill of exceptions.

The Attorney General moves to strike out the exceptions, claiming that they constitute no part of the record when brought to this Court by writ of error. This motion is said to be founded upon the practice which has recently prevailed in this Court under its former organization, though no case of the kind appears in the Reports— cases of practice not having been generally reported. But, as the practice upon this point did not appear to be uniform, and neither the counsel nor the Court had an opportunity, at the time, for due investigation, at the suggestion of the Court the Attorney General filed his joinder in error without prejudice, and the motion and the cause were argued and submitted together.

We will first dispose of the motion. And as the question is one of great importance to the rights of the accused in criminal cases, and a careful investigation has resulted in the

conviction that the practice on which the motion is based is erroneous, we deem it proper to state the reasons for the conclusions at which we have arrived, more fully than we should otherwise think necessary in the decision of such a motion.

The questions raised by the motion turn mainly upon the construction to be given to Chap. 166 of the Revised Statutes of 1846 (*Compiled Laws, Chap.* 197). But, for the purpose of giving a correct construction to this chapter, it may be proper first to notice briefly the statutes giving exceptions in civil causes, and writs of error in civil and criminal causes.

Chap. 138, sections six and seven, of the Revised Statutes, gives a writ of error alike in civil and criminal causes; but no such writ is to issue upon a judgment of conviction for treason or murder in the first degree, unless allowed by one of the Justices of the Supreme Court, after notice given to the Attorney General. In all other cases, such writ issues of course, but does not stay the execution of the judgment or sentence, unless allowed by one of the Justices of the Supreme Court, with an express order thereon for a stay of proceedings.

Chapter 103, section 62, of the Revised Statutes, gives to "any party, aggrieved by any opinion, direction, or judgment of any Circuit Court, in any civil suit or action, the right to allege exceptions thereto in writing," &c. Sections 63, 64, and 65 provide as to the time and manner of settling the exceptions, the power to compel the judge to sign the exceptions, when true, and that signing of the exceptions shall not prevent argument of motion to set aside verdict as against evidence. Section 66 is as follows: "If such bill of exceptions be taken in any cause pending in any Circuit Court, it shall be filed with the clerk of such Court, who shall return the same, together with the record and other proceedings in any cause which shall be removed by writ of error or otherwise."

We come now to the consideration of chapter 166. It is admitted by the Attorney General, and can not be denied,

that if the effect of this statute is to make the exceptions a part of the record in this Court, after judgment in the Court below, then they are properly here under the return to the writ of error, and the motion must be denied. This chapter, so far as relates to this question at least, is copied from the Massachusetts Revised Statutes, chapter 138, even to its blunders and incongruities.—See 1 *Metc.* 431, for explanation of our sixth section. Section two of this chapter is in these words: "Any person who shall be convicted of any offense before any court of record, considering himself aggrieved by any opinion, direction, or judgment of the Court in any matter of law, may allege exceptions to such opinion, direction, or judgment, which exceptions being reduced to writing in a summary mode, and presented to the judge before the end of the term, and found conformable to the truth of the case, shall be allowed and signed by the judge."

Section three provides that upon signing the exceptions, all further proceedings in the Court below shall be stayed, unless it shall clearly appear to the judge that such exceptions are frivolous, immaterial, or intended only for delay; and in that case, judgment may be entered and sentence awarded, &c.

Section four relates only to the reservation, by the judge, of questions of law arising on the trial, on which, for his own information, at the request or with the consent of the prisoner, he may ask the opinion of the Supreme Court, and himself report it to them for that purpose, staying proceedings in the meantime.

Section five provides that "Any person who shall file exceptions, or for whose benefit a report shall be made, as provided in the preceding sections, may recognize," &c.

Section six is in the following words: "If such person shall not so recognize, he shall be committed to prison to await the decision of the Supreme Court, and in that case the clerk of the Court in which the conviction was had, shall file a certified copy of the record and proceedings in the case, in the Supreme Court; and such Court shall have

jurisdiction to hear and determine the questions of law arising on such exceptions or report, and shall certify their determination to the court in which the trial was had, together with directions as to a new trial, or such other proceedings as right and justice shall require; but the proceedings herein prescribed shall not deprive any party of his writ of error for any error or defect appearing of record."

It is insisted by the Attorney General, 1st, That this statute does not declare that the exceptions shall constitute. a part of the record: 2d, That the only mode provided by the statute for bringing the exceptions before the Court, is; by the certificate of the clerk under section six, and that this only applies to the case *before* judgment: and, 3d, That the "record" spoken of at the conclusion of section six (for errors in which a writ of error may be brought), does not include the bill of exceptions, and hence that the exceptions are not properly before the Court. It is obvious that all these objections turn upon the last; the others constituting the premises upon which the third point is sought to be sustained.

I shall consider this question, *first*, on the hypothesis that the whole question must turn upon this chapter alone: and, *second*, as it may be affected by other portions of the Revised Statutes and the practice at common law.

1st. As to the first objection, it is obvious that this statute. does not expressly declare that the exceptions shall constitute a part of the record; neither does the statute in relation to. civil causes so declare; nor did the statute Westminster 2d, which first gave the bill of exceptions in England: yet, under both, on writ of error, the exceptions have always. been treated as a part of the record. As to the second objection, it may also be admitted that the provision in the sixth section for certifying the "record and proceedings," was. only intended to apply to cases brought up before judgment, where proceedings have been stayed. But, by the third section, the judge may, in certain cases, sentence the prisoner, notwithstanding the exceptions; and by the last clause of

section six, the right to the writ of error is reserved to the prisoner: this can only be had after judgment, and would seem to be peculiarly fitted to the case where judgment should be entered as mentioned in section three. But it was urged, upon the argument, that the exceptions in such a case were not, by the statute, required to be filed with the clerk, and hence that he could not officially return them as a part of the record.

The language of the fifth section has a strong bearing upon this point. "Any person who shall *file* exceptions, or for whose benefit a report shall be made by the judge, *as provided by the preceding sections*, may, if the offense be bailable, recognize," &c. Now, although a party *already sentenced* may not be included in this section, yet we can not therefore conclude that the "filing exceptions" mentioned in the first clause applies only in cases where no sentence has been given: the contrary idea is very clearly, though inferentially, expressed. The clause "as provided in the preceding sections" applies to, and qualifies both the clauses "shall file exceptions," and "report shall be made"; and, as relates to the filing, the effect is exactly equivalent to saying "any person who shall file exceptions, as is provided in the preceding sections." The only preceding sections which mention the exceptions at all are sections two and three; hence, the effect is the same as to have said, "any person who shall file exceptions, as is provided in sections two and three of this chapter." Yet it is apparent that neither of these sections has expressly spoken of filing the exceptions at all. But it is, nevertheless, very clear that the Legislature considered the alleging, signing, and allowance of the exceptions to include also the filing: if so, it must have been for the reason that the exceptions being given by those sections, the Legislature understood that some other statute, or some known rule of practice, would require them to be filed. This reason would require them to be filed as well in cases where the prisoner is sentenced as where he is not: there is no conceivable

ground for holding that they were to be filed in the one case, and not in the other. If the filing is implied in the one case, it is equally so in the other: to deny that they are to be filed when the judge sees fit to sentence the prisoner, equally denies that they are to be filed when the proceedings are stayed and no sentence awarded. I shall refer to this point again, when I come to consider the question in reference to other portions of the Revised Statutes: I shall defer also till then the consideration of various other portions of this chapter which strongly tend to the same conclusion.

But should it be held that we are confined to this chapter, and not allowed to look beyond it for the mode of getting the exceptions before this Court, still I think this language of section five sufficiently indicates the legislative intent that the exceptions are, in all cases, to be filed with the clerk, though the previous sections referred to as requiring it are silent on the subject. We ought, I think, to give effect to the intent, however inartificially expressed. If the exceptions, as I think I have shown, are to be filed with the clerk, then it will hardly be contended that they do not form a part of the record.

But if the statute has not sufficiently provided, either directly or by implied reference to some other statute, or to some known practice, for the filing of the exceptions, then it follows that, though it has given the right to exceptions, and provided for the signing and allowance of them, yet it has provided no mode of bringing them judicially before any other court for review, either before or after judgment. It is true that, under the sixth section, the clerk is to certify the "record and proceedings"; but if they are included in the "record," and come up under that designation before judgment, then certainly they constitute a part of the record after judgment: the sentence of the prisoner would not take them off the record. Will it be said they come up under the designation of "proceedings"? This word is equally

applicable, in connection with the record, where there are no exceptions; but the conclusive answer is, that if they are not to be filed with the clerk, they are not legally in his custody, and his certificate would be an unofficial act, having no more validity than that of a notary public or a private individual.

But I come now to the second, and what I deem to be the true, view of this question. And I proceed upon the distinct admission, that, as claimed by the Attorney General, this chapter has given the exceptions in criminal causes, without providing what shall be done with them, or any mode of bringing them judicially before this Court—or, at least, that it has failed to do so where judgment has been entered. I do not think the admission true to the full extent, and without qualification, as already shown by the view I have taken of section five; but I purposely place it upon the admission of the strongest ground that can be assumed by those, who deny the exceptions to be part of the record in this case: and I proceed to show that it does not follow from this admission that the exceptions do not properly come before us in this cause as a part of the record, but that the conclusion at which I arrived in the first view above taken, will, under this admission, be strengthened and confirmed—that we shall pass, in fact, from inference to demonstration.

Let us recur to the nature and origin of the bill of exceptions. At common law, strictly so called, it had no existence, either in civil or criminal cases; and there was no mode of bringing before a superior court, for review, after judgment, any error committed by the judge on the trial, in admitting or rejecting testimony, or in the charge which he might give to the jury; because these matters did not appear upon the record. To remedy this defect, the statute Westminster 2d, 13 Edward I., was passed in the year 1285 (2 *Reeves' History of the English Law, pp.* 186, 188, *and* 189; 3 *Bl. Com.* 372). This statute was confined to civil cases: it did not expressly provide that the exceptions should

become a part of the record, but the Court so treated them when the cause was removed, after judgment; into a court of error, where the exceptions were annexed to the record, and not before. — 1 *Sellon's Pr.* 470, 471. And from the passage of that statute to the present day, the bill of exceptions has been of familiar and constant use in England, and has been adopted, at least in civil causes, in almost every state and country where the common law prevails — indeed, it may almost be said to constitute a part of the common law. The exceptions were given by statute, but the right to make them, and the mode of making them, a part of the record, were, in England, settled by the common law, by judicial decision. And in that country, and in all others which have adopted the bill of exceptions, as far as my information extends, it has substantially preserved its original meaning and purpose, and has everywhere become a well defined legal term, importing, as a general rule (however it may have been varied in other respects), *ex vi termini*, a mode of getting upon the record, for the purpose of review in a superior court, matters occurring upon the trial, which would not otherwise appear upon the record; such as the ruling of the judge in admitting or rejecting testimony, and the nature of his charge to the jury. This will sufficiently appear by reference to any works of practice where the common law mode of procedure prevails; and it would savor of affectation to cite specifically the cases and authorities to prove so obvious a proposition. Such, then, being the sense and meaning of the term as settled by the practice and legal phraseology of nearly six centuries, it is safe to say that such is the primary idea of its purpose conveyed to the legal mind wherever the term is used; and that wherever a statute gives the party aggrieved by the opinion, ruling, or decision of the judge upon the trial, the right to exceptions, or a bill of exceptions, this primary incident, if not essential attribute, must be understood to accompany and form a part

of the remedy, unless negatived by the express words of the statute, or by necessary implication arising from other provisions of the same or some other statute, clearly inconsistent with this incident.

Let us illustrate by a case. The Legislature, by one statute, give the right of exceptions in civil causes, and in that statute provide specifically the mode of returning them into the Court above for review; then, say years after, they extend the same right of exceptions to defendants in criminal causes, but make no provision for returning them into the Court above, or making any other disposition of them. Would not the inference be strong that the Legislature intended the provisions of the former statute should apply as to this point? and would not this be the only apparent reason for neglecting to provide any such method in the latter statute? Such, it appears to me, would be, if not the necessary, at least the natural inference. If a new statute employ terms or modes of expression which have acquired a definite meaning in previous statutes, the established interpretation will be regarded. — *Whitcomb vs. Rood*, 20 *Vt.* 49; *U. S. vs. Willson*, *Bald.* 78, 95; *Shepard vs. Gosnold, Vaugh.* 159. The case would be still stronger if the statutes were contemporaneous, and especially if they constituted parts of the same entire code, adopted at the same time as one entire Act. The last supposition is the case presented by our statutes. And if these views are correct, they settle the question of construction raised by the present motion.

From these considerations it results that the statute in reference to exceptions in civil causes, takes up these exceptions where they are left by chapter 166, and applies to them where that chapter is silent. They will then be required to be filed with the clerk, and sent up with the record, as in civil causes. — *Chap.* 103, *Sec.* 66. This view at once explains and removes the apparent inconsistency of the language of section five, already noticed, and which otherwise might have appeared to be a mistaken reference to

previous sections; for if the exceptions, when given by section two, fall at once under the provisions of section 66 of chapter 103, in reference to filing and returning exceptions in civil causes, then the effect is the same as if that section had been again enacted in connection with section two; and in this view the language of section five, which speaks of the filing provided for under previous sections, becomes perfectly correct and harmonious.    This construction also removes at once all the other apparent omissions and inconsistencies of chapter 166, and makes one harmonious system.  The exceptions become a part of the record beyond dispute, and the record mentioned in the conclusion of section six includes them.    And here I will remark that, in my view, this provision reserving the "writ of error for any error or defect appearing of record," strongly confirms this construction.   It is in the nature of a saving clause; and as nothing had been said in this chapter from which any implication could have arisen, or been supposed to arise, against a writ of error for errors appearing upon the record proper (such as the indictment or sentence), this saving clause would be wholly unnecessary to save the defendant the writ of error for such a purpose, as that had already been given him, in all cases, by another chapter; and nothing has been said in this chapter which could impliedly take it from him.    But this chapter having provided for exceptions, and given a right to have them heard in this Court, *before judgment*, in *certain cases*, an implication *might* have arisen a ainst making them available in any *other mode* or at any *other time*, but for this saving clause.    And as provision had been made in section three that judgment might be entered against the prisoner in a certain contingency, after the exceptions had been allowed, here was a case to which the mode provided in the previous part of section six did not apply; hence the propriety of reserving to the defendant his right to the writ of error, as the only mode in which he could, in such a case, avail himself of the exceptions.   But for this, the reservation

of the writ of error would have been wholly useless and impertinent in this connection.

I proceed now to show some of the inconsistencies, and, as I think, absurdities, which must result if we are confined to the express words of chapter 166 alone, and refuse to recognize the exceptions as a part of the record.

It is admitted by the Attorney General that the defendant, after judgment, has *no remedy except* by writ of error; but he contends that under this writ he is deprived of the benefit of the exceptions, though duly signed and allowed — that the Circuit Judge must have deemed the exceptions frivolous (and such we must legally presume was the view taken by the judge, or he could not have sentenced the prisoner until the exceptions were disposed of in this Court). This construction necessarily makes the decision of the Circuit Judge upon the exceptions final and conclusive, beyond the power of review in any other court: this the Attorney General sees, and frankly avows, and deplores, as the result of his construction. Whatever may have been the defects of the evidence — whatever errors the judge may have committed in admitting or rejecting evidence, or in his charge to the jury (and no judge can always avoid errors in the hurry of a trial at the Circuit) — however well founded may be the exceptions, yet because the same judge to whose decision or charge the exceptions are taken (and who has already decided that they are insufficient before they are taken), has chosen to treat them as frivolous, the defendant is without remedy, and must suffer and submit in silence. This, it appears to me, would be vesting in a single judge an arbitrary and irresponsible power, little accordant with the genius of our institutions or the spirit of the age.

If such be the law, we have only to carry it out, however revolting it may be to our sense of justice; but this Court ought not to adopt such a construction until they are satisfied beyond doubt that the statute will not admit of a more reasonable and liberal construction. — 24 *Pick.* 369, 370;

*Doe ex dem. vs. Norton,* 11 *Mees. & Wels.* 928–9. This is a remedial statute, and should be construed liberally for the advancement of the remedy.—*Dwarris on Stat.* 632; *Sedgw. on Const. & Stat. L.* 359, 360. "Every thing is to be done in advancement of the remedy that can be given consistently with any construction that can be put upon it."—3 *Dow,* 15; *Dwarris,* 654.

I think I have shown that this statute not only admits of a more liberal construction, but that the latter is much the more natural and obvious. Again, it is apparent from the plain language of the second section that the judge is compelled to sign and allow the exceptions, if found conformable to the truth, whether he may deem them frivolous or not. Now, if it had been the intention of the Legislature to make the decision of the Circuit Judge final and conclusive upon this point, it seems to me they would have used very different and more appropriate language to express the intent. If such had been their intent, they would have provided for the exercise of this final judgment when he should be called upon to sign and allow the exceptions, and that if he deemed them frivolous, he might refuse to sign and allow them. To what end should he be compelled to sign and allow them, if they are never to be used for any purpose whatever?—if at the moment they are perfected with all the forms of judicial solemnity, they are to disappear from the cause into the clouds? This would be compelling the judge to enact a solemn farce, beginning without a purpose, and ending without a moral. The law does not usually compel its officers to do a vain thing; and the respect which the judiciary should always entertain for the legislative power, should forbid us to impute to the Legislature an intention thus futile and absurd.—*Commonwealth vs. Loring,* 8 *Pick.* 374. The Legislature must be supposed to have had *some* design in compelling the judge to sign the exceptions, though he might deem them frivolous; yet the construction contended for leaves this requirement of the statute in such a case void of

any design or purpose whatever.—*Smith's Com. Const. &
Stat. Law, Sec.* 486 *to* 490; *Ibid. Sec.* 518.

Now, the only purpose these exceptions could have been
intended to serve, when held frivolous by the judge, was to
enable the defendant, after sentence, to avail himself of the
objections raised by them in the Supreme Court. No other
purpose can be suggested. But this can only be done, after
judgment, by writ of error, under which these exceptions
should come up as part of the record. A new trial would
be useless while the former judgment remains in force.

Again, if we are to be confined to the express provisions
of this chapter 166, and the exceptions are not required to
be filed, as contended, then they can never be got judicially
before this Court before judgment, any more than after judg-
ment, as I have already shown; and the exceptions become
utterly nugatory in all cases. Yet it seemed to be admitted
on the argument, that in such cases the clerk could properly
certify them to this Court; and such, as I am informed, has
been the general (if not universal) practice: this should have
some weight in the construction of the statute (*Sedgw.* 255,
256, *and cases there cited*); though it 'could not be allowed
to defeat the general intent of the Act (*Ibid.* 257).

To make the exceptions of any effect, therefore, in any
case, we are compelled to go beyond the express provisions
of this chapter. We must, therefore, either come to the con_
clusion that the Legislature, in giving the defendant the
right to exceptions (by section two), in just as broad terms
as in civil cases, without expressly providing any mode for
getting them before a court of review, must have understood
that the statute (or the practice which is fixed by statute,
and therefore is the same thing) in reference to exceptions
in civil causes, would apply to them where no other provision
was made in this chapter. Unless we adopt this construction,
we shall be driven to the old common law mode of bringing
them into a court of review. By that practice, the excep-
tions, when sealed, were delivered to the party excepting,

who brought them into Court, and the judge who tried the cause was sent for to verify his seal. This practice prevailed in England down to a very recent period, and was formerly adopted in several States of the Union. It has been discontinued because, in this country, the seal of the clerk is understood to take the place of the seal of the judge; and our statute only requiring the exceptions to be signed and allowed, perhaps, if driven to this practice, the· signature might be proved, if disputed, or taken as admitted, if not denied. Even this awkward practice should be resorted to, rather than deprive the party of a hearing upon his exceptions. But I think it quite clear that no such necessity exists, and that the true construction of our statutes is that above indicated; viz., that the statute in reference to exceptions in civil causes takes up these exceptions where they are left by chapter 166, and applies to them where this is silent.

All these statutes should be construed together as one Act; they form parts of one entire code passed at the same session.—See 4 *Mich.* 167, *Perry vs. Hepburne.* They are also in *pari materia,* and for this reason should be construed together as one Act.—*State vs. Rackley,* 2 *Blackf.* 249; *Naz. Lit. & Ben. Inst. vs. Commonwealth,* 14 *B. Monr.* 266; *Board of Com'rs vs. Cutler,* 6 *Ind.* 354. See, especially, *Wheeler vs. The State,* 8 *Texas,* 228, where it is held that the statutory directions for bringing up writs of error to judgment, in civil cases, must be followed as far as they can be made applicable, where no provision is made in reference thereto in the statute providing the writ of error in criminal cases.

I have thus endeavored to give a construction of this statute, independent of any judicial decision made directly·in reference to it. But as our statute is copied from that of Massachusetts, and as the whole question turns upon the point whether these exceptions constitute a part of the record, I shall conclude by referring to the construction given by the Courts of that State upon this point, which, but for

the peculiar circumstances connected with this motion, I should have deemed sufficient, without going fully into the reasons for the opinion I have given.

In the case of *Stevens vs. Commonwealth*, 4 *Metc.* 363, which was a writ of error without a bill of exceptions, where the plaintiff in error sought to avail himself of questions which should have been raised by bill of exceptions, Ch. J. Shaw remarks: "To reverse a judgment for error, it must appear erroneous on the face of the record. A judgment is entitled at least to so much respect as to be deemed good unless some error is shown. If a party has any exception to take to the proceedings on the trial, arising out of any fact which does not regularly appear in the record, he should make and file his bill of exceptions, which, being allowed by the judge, becomes a part of the record, and the party may then avail himself of it, either on a summary hearing or by a writ of error; otherwise it is impossible that a court for the correction of errors can judicially know that such matter of error exists." This case shows that, in the opinion of that Court, the exceptions under a statute like ours constitute a part of the record, before as well as after judgment; and such, it appears to me, is the only construction which can reasonably be given to our statute.

Again, in *Commonwealth vs. Cummings*, 3 *Cush.* 215, *et seq.*, where the question was whether the Commonwealth could bring a writ of error in a criminal cause, the same judge, in giving his opinion against it, says: "Another important question is, whether in any case in a criminal prosecution the Commonwealth can have a bill of exceptions. Without this, there would be no mode in which, even by the aid of a writ of error, the material questions of law raised and decided on the trial could be brought before this Court, because they would not appear upon the record." Then, after giving a history of exceptions in criminal cases in that State, he remarks (p. 217): "The right of the Commonwealth to sustain a writ of error in a criminal case, does

not indeed depend on their right to allege exceptions; but the want of the latter may afford some ground of argument; because the right to a writ of error would be of little avail in bringing questions of law before the Court for revision, without the power of stating them fully in a bill of exceptions, so as to come up with the record. This consideration has a tendency to show that the intention of the Legislature in limiting the right to file exceptions to the party accused, was also to limit, in like manner, the right to bring a writ of error."

Such are the opinions of the Courts of Massachusetts upon this statute; and it is not a little remarkable that, while it seems to be admitted on all hands that the practice of the late Supreme Court has, at least recently, been to strike out the exceptions in a criminal case, when sent up with the return to the writ of error, yet no case of the kind has been reported; and if we were to judge from the reports of the decisions of the same Court, we could scarcely resist the conclusion that the practice had uniformly been to treat the exceptions as part of the record, and to consider them as in civil causes. In the case of *Moore vs. The People*, 2 *Doug. Mich.* 420, there was a writ of error, and bill of exceptions. All the errors assigned, at least all that were considered by the Court, were founded upon the bill of exceptions, and upon these the Court reversed the judgment. This was under the Revision of 1838, which, as to this question, is identical with the present statute. *Findley vs. The People*, 1 *Mich.* 234, was another case of writ of error, with bill of exceptions—errors assigned both upon the record proper, and matters appearing upon the exceptions; both were considered and passed upon by the Court (see p. 238). *Smith vs. The People*, 2 *Mich.* 416, is another case of a writ of error and bill of exceptions, decided wholly upon points raised by the bill of exceptions; and a new trial was awarded.

*Alderman vs. The People*, 4 *Mich.* 414, decided as late as January Term, 1857, is a similar case. The Reporter

seems to have been more than usually explicit in his statement of the facts, that "a bill of exceptions was signed in the case, which was returned with the writ of error, and special errors were assigned upon matters contained in the indictment and bill of exceptions"—as if it were not according to the general practice. Still, from the report, no question seems to have been made as to the propriety of thus treating the bill of exceptions, nor does the question seem to have been raised in any of the other cases; and the exceptions were considered in this case as in all the former cases. These cases would ordinarily be considered sufficient to settle the practice. We can but conclude that this practice was departed from, and the incorrect practice substituted, without sufficient consideration. At all events we deem the former practice the correct one, and based upon the true construction of the statute.

The motion should therefore be overruled.

All the Justices concurred.