NORMAN REDLICH, as Corporation Counsel of the City of New York, et al., Appellants, *v.* CAPRI CINEMA, INC., et al., Respondents. (Action No. 1.)

NORMAN REDLICH, as Corporation Counsel of the City of New York, et al., Appellants, *v.* MATURE ENTERPRISES, INC., et al., Respondents. (Action No. 2.)

NORMAN REDLICH, as Corporation Counsel of the City of New York, et al., Appellants, *v.* MOD AMUSEMENT CO., INC., et al., Respondents. (Action No. 3.)

NORMAN REDLICH, as Corporation Counsel of the City of New York, et al., Appellants, *v.* LIDO WEST THEATRE, INC., et al., Respondents. (Action No. 4.)

First Department, November 27, 1973.

*Lewis R. Friedman* of counsel (*Michael R. Juviler* and *Anthony J. Girese* with him on the brief), for Frank S. Hogan, District Attorney, appellant.

*Jesse J. Fine* of counsel (*Stanley Buchsbaum, Renée Modry* and *Joseph I. Lauer* with him on the brief), for Norman Redlich, Corporation Counsel, appellant.

*Herbert S. Kassner* of counsel (*Kassner & Detsky*, attorneys), for respondents.

McGIVERN, J. P. On July 19 and 20, 1973, Judges of the Criminal Court of the City of New York viewed certain films: "Behind the Green Door", "High Rise", "The Newcomers" and "The Innocent Abroad". The Judges determined that these films were obscene, search warrants were issued and they were seized.

On July 24, 1973, the District Attorney of New York County and the Corporation Counsel of the City of New York jointly commenced actions against the theatre owners and distributors, pursuant to CPLR 6330. This section confers upon the Supreme Court jurisdiction to enjoin the distribution of a motion picture "of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting * * * or in any other respect defined in section 235.00 of the penal law". The plaintiffs sought an injunction *pendente lite*.

On August 14, 1973, Mr. Justice GELLINOFF, at Special Term, dismissed the complaints, denied the applications for a preliminary injunction, holding that CPLR 6330 was overbroad, therefore unconstitutional, and that the court had no evidence to gauge the contemporary standards of the community. We do not agree.

Although the defendants refused to present expert testimony, Mr. Justice GELLINOFF himself found the films "obscene" and in the court's personal opinion "patently offensive". We concur. In the case of "The Green Door" movie, the advertisements vaunted it as "hard-core", and a movie critic noted that it depicted acts of sexual perversion. In so advertising, the defendants were exploiting pornography for its own sake and were blatantly pandering to prurient interests for commercial gain alone. Actually, it is beyond question, all four films graphically depicted various acts of sexual misconduct, including performances of sodomy and sadism, sometimes involving several participants in grossly perverted acts. These multiple and variegated ultimate acts of sexual perversion would have been regarded as "obscene" by the community standards of Sodom and Gomorrah.

And since these films are "simple pornography, unrelieved by any merit" (*People* v. *Heller,* 29 N Y 2d 319, 321), they are "obscene". The Court of Appeals has already equated "obscenity" with hard-core pornography. (*People* v. *Richmond County News,* 9 N Y 2d 578, 586; *People* v. *Weingarten,* 25 N Y 2d 639.) The Criminal Court Judges, who viewed the films, found probable cause. They were correct. There can be no doubt, dealing, as we are, with palpably hard-core pornography, the average person in New York State, City or County, would in all likelihood, have concluded these pictures appealed to prurient interest. Indeed, these films would have to be adjudged so by any standard the Legislature or the courts could have articulated. Other Special Terms have found no difficulty in deciding the question at issue in favor of injunctive relief as authorized by CPLR 6330. (*Lazarus* v. *Yorkview Theater Corp.,* 74 Misc 2d 729 [Sup. Ct., Monroe County, June 19, 1973, LIVINGSTON, J.]; *Incorporated Vil. of Lynbrook* v. *United Artists Corp.,* 75 Misc 2d 124.) And thus, we decide Special Term herein was in error when it denied the injunction *pendente lite.*

Turning now to the statute, we feel CPLR 6330 is well within the three basic guidelines set forth by *Miller* v. *California* (413 U. S. 15). That case held that State statutes, designed to regulate obscene materials, do not violate the First Amendment, but they must be limited to sexual conduct "specifically defined by the applicable state law, as written *or authoritatively construed*". (p. 24; emphasis added.) And the court enunciated a three-part test of a constitutional limitation: (a) whether the average person, applying community standards, would find the work appeals to prurient interest; (b) whether the work depicts, in a patently offensive way, sexual conduct specifically defined by the applicable State law; and (c) whether the work lacks serious literary, artistic, political or scientific value. The court then went on to give "examples" of the types of obscenity a State "could define for regulation", such as patently offensive representations or depictions of ultimate sexual acts, normal or perverted, actual or simulated, and representations of masturbation, excretory functions, and lewd exhibition of the genitals. And it is noteworthy that the court, in *Miller,* in describing the material it was considering, referred to it as "pornography", i.e., obscene material dealing with sex, which is what the pictures before us indisputably are.

Yet Special Term finds CPLR 6330 "overbroad" in its provisions, and thus unconstitutional. We feel Special Term erroneously overlooked the invitation of the Supreme Court in *Miller*, extended to the State courts, that they fill in any statutory interstices or rectify any deficiencies, by their own authoritative judicial constructions. That is why the Supreme Court remanded any number of cases, including *People v. Heller (Heller v. New York,* 413 U. S. 483) to the various State courts, that the State courts could have the opportunity to construe their own existing statutes so as to determine whether, as so construed, they complied with the standards of *Miller.* (See *Alexander v. Virginia,* 413 U. S. 836; also, *United States v. Thirty-Seven Photographs,* 402 U. S. 363 [1971]; *United States v. Twelve 200-ft. Reels of Super 8 MM Film,* 413 U. S. 123, 130, n. 7 [1973].) *Miller* specifically held that it did not require a State to enact new obscenity laws, but that the existing State statutes "as construed heretofore or hereafter" may well be adequate. In *Paris Adult Theatre I v. Slaton,* the Supreme Court said (413 U. S. 49, 69 [1973]): "In light of these holdings, nothing precludes the State of Georgia from the regulation of the allegedly obscene materials * * * provided that the applicable Georgia law, as written or authoritatively interpreted by the Georgia courts, meets the First Amendment standards set forth in *Miller v. California* ".

In holding, as we do, that the New York courts should synthesize by judicial construction the requirements of the *Miller* standards into CPLR 6330, we note also that in section 235.00 of the Penal Law [which is referred to in CPLR 6330 for an alternative description of obscene sexual conduct], most of the language is the same as in the California statute considered in *Miller* and also in the Georgia statute involved in *Paris Adult Theatre I v. Slaton (supra).* We note also that in considering the New York statute in *People v. Heller (supra)* the Supreme Court had an opportunity to declare it unconstitutional. But it did not do so.

Finally, we note that the constitutionality of the injunctive relief set forth in section 22-a of the Code of Criminal Procedure, the predecessor to CPLR 6630, was upheld in *Brown v. Kingsley Books* (1 N Y 2d 177), which the Supreme Court subsequently affirmed *sub nom. Kingsley Books v. Brown* (354 U. S. 436).

And by stepping into the breach and saving the statute by incorporating into it the *Miller* postulates, we do so in the light of settled law that (a) the courts may interpret statutory

language so as to preserve the validity of a statute. As Chief Judge FULD said in *Matter of Bell* v. *Waterfront Comm.* (20 N Y 2d 54, 62): "In the past, when faced with the choice of declaring a statute unconstitutional under the First Amendment or interpreting the legislation in such a way as to supply a missing constitutional safeguard, neither this court nor the Supreme Court has hesitated to ' embrace [the course] which will preserve [the statute's] validity.'" (b) CPLR 6330 is not a criminal statute. It is remedial only; it looks to a civil injunction and provides the mechanism to prevent future misconduct. It is to be liberally construed. (McKinney's Cons. Laws of N. Y., Book 1, § 275 Statutes.) (c) We are considering a temporary injunction only. One of the principal yardsticks is the likelihood of success. Since these films are unabashedly pornographic, utterly without redeeming social value, representing the very nadir of decadence, the preponderation of success is overwhelmingly in favor of the plaintiffs, and the preliminary injunctions should have been granted.

We further find on the basis of history, common sense and the legislative policy which lead to the enactment of our obscenity laws, that the failure to grant a preliminary injunction would cause grave public harm and constitute an unwarranted rejection of legislative intent. (*Tenney* v. *Liberty News Distrs. Co.,* 13 A D 2d 770; *Lazarus* v. *Yorkview Theater Corp.,* 74 Misc 2d 729, *supra*; *Walter* v. *Slaton,* 227 Ga. 676, cert. den. 404 U. S. 1003.)

Hence, the orders appealed from should be reversed, on the law and on the facts, the complaints reinstated, and the preliminary injunctions requested granted, with costs.

NUNEZ, KUPFERMAN, LANE and CAPOZZOLI, JJ., concur.

Four orders, Supreme Court, New York County, each entered on or about August 14, 1973, unanimously reversed, on the law and on the facts, the cross motions denied, the complaints reinstated, and the motions for preliminary injunctions granted, and, in each action, appellants shall recover of respondents $60 costs and disbursements of the appeal.