## KENT COUNTY PROSECUTOR v ROBERT EMMETT GOODRICH CORPORATION

OPINION OF THE COURT·

1. OBSCENITY—CONSTITUTIONAL LAW—STATUTES—CONSTRUCTION.

Federal case law sets down three alternatives under which a state obscenity statute could be deemed constitutional: (1) the statute must specifically define the prohibited sexual conduct, (2) the statute as heretofore authoritatively construed must specifically define the offensive conduct, or (3) the statute as hereafter authoritatively construed must specifically define the prohibited sexual conduct.

2. OBSCENITY—CONSTITUTIONAL LAW—STATUTES—SPECIFICITY.

The Michigan civil obscenity statute is constitutionally inadequate because it is couched in terms of expression rather than specifically defined sexual conduct as required by Federal case law (MCLA 600.2938).

3. STATUTES—CONSTRUCTION—CONSTITUTIONAL LAW—JURISDICTION.

A local trial court cannot authoritatively construe offensive conduct defined by a state obscenity statute; as used by the United States Supreme Court, the term "authoritatively construe" implies a construction rendered by an appellate court with statewide jurisdiction, which in Michigan is the Supreme Court or the Court of Appeals.

4. OBSCENITY—CONSTITUTIONAL LAW—STATUTES—INJUNCTIONS.

A trial court may not grant an injunction against a theater owner to prevent the exhibition of an admittedly offensive motion picture where there is no state law, either statutory or judicial, which "specifically defines" the depictions of sexual conduct which the state may regulate.

REFERENCES FOR POINTS IN HEADNOTES

[1–7, 9] 50 Am Jur 2d, Lewdness, Indeceny, and Obscenity §§ 6–8, 11.
Modern concept of obscenity. 5 ALR3d 1158.
[1–8] Validity of procedures designed to protect the public against obscenity. 5 ALR3d 1214.
[8] 50 Am Jur 2d, Lewdness, Indeceny, and Obscenity § 12.

5. OBSCENITY—CONSTITUTIONAL LAW—STATUTES—SPECIFICITY.

The civil obscenity statute, which proscribes the sale, distribution, acquisition or possession of material containing " * * * an article or instrument of indecent or immoral use * * * "; specifically defines the proscribed conduct of public exhibition of a motion picture which contains pictures of a dildo (an article or instrument) being physically used for indecent purposes (MCLA 600.2938).

6. OBSCENITY—CONSTITUTIONAL LAW—STATUTES—CONSTRUCTION—AUTHORITATIVE CONSTRUCTION.

The Court of Appeals and the Michigan Supreme Court have authoritatively construed the state obscenity statute so as to incorporate therein the definition of the words "obscene" and "obscenity" as defined in prior Federal case law, and by limiting its effect to cover acquisition and possession for sale or distribution only of the proscribed material, and not personal possession or acquisition (MCLA 600.2938).

7. OBSCENITY—CONSTITUTIONAL LAW—STATUTES—CONSTRUCTION—SPECIFICITY.

The civil obscenity statute is not unconstitutional as being vague or overbroad, and the statute as authoritatively construed sufficiently describes the proscribed conduct as required by Federal case law (MCLA 600.2938).

8. OBSCENITY—CONSTITUTIONAL LAW—DUE PROCESS—NOTICE.

A defendant theater owner was not deprived of fair notice or due process in a proceeding under the civil obscenity statute where he was served with the plaintiff's complaint containing specific descriptions of the material claimed to be proscribed by law and was given an evidentiary adversary hearing wherein all issues of fact and law were considered by the court; the defendant was not faced with a criminal charge that would threaten a deprivation of liberty or property.

9. OBSCENITY—CONSTITUTIONAL LAW—STATUTES—CONSTRUCTION.

The civil obscenity statute, providing a method to prevent future misconduct by means of a civil injunction, is remedial only and should be liberally construed; the Court of Appeals, in order to preserve the statute, should read into the statute the standards required by Federal case law so that the statute can conform to Federal and state constitutional requirements (MCLA 600.2938).

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 December 7, 1973, at Grand Rapids. (Docket No. 18420.) Decided May 2, 1974. Leave to appeal applied for.

Complaint by the Kent County Prosecutor and the City Attorney for the City of Grand Rapids against the Robert Emmett Goodrich Corporation for a temporary and permanent injunction to prevent exhibition of a motion picture. Injunctions granted. Defendant appeals. Reversed.

*James K. Miller*, Prosecuting Attorney, and *Donald A. Johnston, III*, Chief Appellate Attorney, for plaintiffs.

*Warner, Norcross & Judd* (by *John D. Tully*), for defendant.

Before: T. M. BURNS, P. J., and HOLBROOK and McGREGOR, JJ.

McGREGOR, J. On October 3, 1973, the defendant owner-operator of the Savoy Theatre in Grand Rapids began showing the film, "The Devil in Miss Jones". That same day, the Kent County Prosecutor and the Grand Rapids City Attorney filed a complaint seeking a temporary and permanent injunction against further showing of the film, pursuant to Michigan's civil obscenity statute, MCLA 600.2938; MSA 27A.2938. Based on this complaint, the trial court granted a temporary injunction on October 4, 1973, and set trial for October 10, 1973. Defendant waived his statutory right to a hearing within one day. MCLA 600.2938(4); MSA 27A.2938(4).

For purposes of the action in the lower court, the parties stipulated that the film depicted patently offensive representations or descriptions of

ultimate sexual acts, normal or perverted, actual or simulated, and patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibitions of the genitalia. The parties further stipulated that the film's predominant appeal is to prurient, shameful, and morbid interest in nudity, sex, and excretion, which went substantially beyond customary limits of candor in the community in describing or representing such matters. Finally, it was stipulated that the movie lacks serious literary, artistic, political, or scientific value.

After hearing the oral arguments of the parties, reviewing the memorandums of law submitted by the parties, and after personally viewing the film, the trial court permanently enjoined the showing of the film. The defendants were granted a stay of the injunction pending appeal.

The sole question on appeal is whether the injunction was proper, in light of *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973).

In June of 1973, the United States Supreme Court handed down a series of decisions re-examining the nebulous area of obscenity regulation. In *Miller v California, supra,* Chief Justice Burger, for a majority of the Court, spoke of the dangers in attempting to regulate expression:

"State statutes designed to regulate obscene materials must be carefully limited. [Citation omitted.] As a result, we now confine the permissible scope of such regulation to works which depict or describe sexual conduct. *That conduct must be specifically defined by the applicable state law, as written or authoritatively construed.*" 413 US 15, 23–24; 93 S Ct 2607, 2614–2615; 37 L Ed 2d 419, 430 (1973). (Emphasis added.)

*Miller* sets down three alternatives under which

the Michigan statute could be deemed constitutional: (1) The statute must specifically define the prohibited sexual conduct. (2) The statute as heretofore authoritatively construed must specifically define the offensive conduct. (3) The statute as hereafter authoritatively construed must specifically define the prohibited sexual conduct.

The Michigan civil obscenity statute, MCLA 600.2938(1); MSA 27A.2938(1) regulates conduct:

" * * * which is obscene, lewd, lascivious, filthy, indecent or disgusting, or which contains an article or instrument of indecent or immoral use or purports to be for indecent or immoral use or purpose."

This statute is couched in terms of expression rather than specifically defined sexual conduct, as required by *Miller.* A cursory examination of the Oregon[1] and Hawaii[2] statutes referred to approvingly in *Miller* points out the inadequacy of the Michigan statute.

Cases decided prior to *Miller* are of little help in deciding this issue, given the new requirement of specificity as set out in *Miller.* Research fails to turn up any case heretofore decided which would meet the new standards. At any rate, that problem is not before us, as the trial judge attempted to "authoritatively construe" the statute himself.

What is "authoritative construction" of the statute? Can a circuit judge's interpretation of the statute be considered "authoritative"? While the United States Supreme Court has frequently used this term in First Amendment cases going back several years, the Court has never defined exactly what it meant by the term. *United States v Thirty-Seven Photographs,* 402 US 363; 91 S Ct 1400; 28

---

[1] Oregon Laws 1971, c 743, art 29, §§ 255–262.

[2] Hawaii Penal Code, Tit 37, §§ 1210–1216.

L Ed 2d 822 (1971); *Gooding v Wilson,* 405 US 518; 92 S Ct 1103; 31 L Ed 2d 408 (1972). Placed in context, however, the reference was always directed at the state Supreme Court.

One of the best discussions of "authoritative construction" can be found in *Gooding v Wilson, supra,* in which the Court considered a challenge to a Georgia statute making it a misdemeanor for any person, without provocation, to use certain words or abusive language causing a breach of the peace. In discussing the constitutional challenge to the statute, the Supreme Court stated:

"It can therefore withstand appellee's attack upon its facial constitutionality only if, as *authoritatively construed by the Georgia courts,* it is not susceptible of application to speech * * * protected by the First and Fourteenth Amendments." 405 US 518, 520; 92 S Ct 1103; 31 L Ed 2d 408, 413 (1972).

Also in *Gooding,* the Supreme Court referred approvingly to the New Hampshire Supreme Court's limiting construction of their statute. That Court construed their statute to prohibit only "fighting words". The Court stated that, in view of this *"authoritative construction",* the statute was not constitutionally infirm.

*Gooding* refers to an authoritative construction by the Georgia *courts.* In *Paris Adult Theatre I v Slaton,* 413 US 49; 93 S Ct 2628; 37 L Ed 2d 446 (1973), Justice Burger also made a reference to this authoritative construction by the state *courts.* It can be argued that this reference to *courts* indicates that a trial court could "authoritatively construe" the statute. This contention can be laid to rest by an examination of a key footnote in *Gooding.*

In *Gooding v Wilson, supra,* reference was re-

peatedly made to the construction given to the statute by the Georgia appellate courts. The Supreme Court accepted the interpretation by the Georgia appellate bench as being authoritative in the following footnote:

"We were informed in oral argument that the Court of Appeals of Georgia is a court of statewide jurisdiction, the decisions of which are binding upon all trial courts in the absence of a conflicting decision of the Supreme Court of Georgia. Federal courts therefore follow these holdings as to Georgia law." 405 US 518, 525; 92 S Ct 1103, 1107–1108; 31 L Ed 2d 408; n 3 (1972).

The clear import of this footnote is that an appellate court with statewide jurisdiction could render an authoritative construction of a state statute. However, a local trial court could not do so.

In Michigan, this Court is of statewide jurisdiction and in many cases is the court of last resort. As such, this Court would be capable of making an "authoritative construction" of the statute in question. A circuit judge, whose jurisdiction is limited to the county in which he sits, cannot qualify to "authoritatively construe" state issues. The key word is "authoritatively", for there is no question but that trial courts can and do construe state statutes. The Supreme Court's use of the term "authoritatively" implies either the highest court in the state or a court of last resort, *i.e.,* the Michigan Court of Appeals.

Since the decision in *Miller,* several state courts have had occasion to interpret their respective statutes in light of the new standards. *State v J-R Distributors, Inc,* 82 Wash 2d 584; 512 P2d 1049 (1973); *State ex rel Keating v "Vixen",* 35 Ohio St 2d 215; 301 NE2d 880 (1973); *Rhodes v State,* 283

So 2d 351 (Fla, 1973); *Stroud v State,* 300 NE2d
100 (Ind, 1973). The Supreme Court of Washington
and the Florida Supreme Court "authoritatively
construed" their statutes according to the require-
ments of *Miller.* The Ohio Supreme Court felt that
their statute, as theretofore construed, was consti-
tutional, and the Indiana Supreme Court stated
that their statute was too general and thus consti-
tutionally vague.

It is important for this Court to note that it was
the highest court in all four states which con-
strued the respective statutes in light of Miller. It
does not follow, as the plaintiffs argue, that since
other state supreme courts could "authoritatively
construe" their statutes, the trial judge in the
instant matter had the power to do so. The only
logical conclusion to be drawn from the post-*Miller*
cases is that an appellate court of statewide juris-
diction is the proper body to "authoritatively con-
strue" the state obscenity statutes.

The Louisiana Supreme Court recently held that
the requirement of *Miller v California, supra,* that
prohibited conduct be specifically described in stat-
utory language cannot be supplied by mere con-
struction of an unspecific pre-*Miller* obscenity stat-
ute. The Louisiana Supreme Court thus struck
down the state's obscenity law and advised the
Legislature to get to work. *State v Shreveport
News Agency,* decided December 3, 1973, 287 So 2d
464 (La, 1973).

The Louisiana Supreme Court holds with the
Indiana Supreme Court, that to "construe" specific
descriptions of prohibited sex acts into a simple
obscenity statute that has already been judicially
narrowed to satisfy the *Roth-Memoirs* test would
be to err on the side of judicial activism. It is one
thing to interpret a Legislature's words, and an-

other to write new elements of crime, with definitions, into a statute.

It is our conclusion that the injunction was improperly granted since there is no state law, either statutory or judicial, which "specifically defines" the depictions of sexual conduct which the state may regulate. The trial judge lacked the power to authoritatively construe the statute.

It is noted that the Michigan Supreme Court has just heard arguments on *People v Bloss,* 388 Mich 409; 201 NW2d 806 (1972), vacated by the United States Supreme Court at 413 US 909; 93 S Ct 3060; 37 L Ed 2d 1021 (1973). Given the fact that our highest Court will have the opportunity to re-examine the Michigan obscenity laws in light of *Miller,* we decline to act further than reversing the trial judge and ordering the injunction vacated.

Reversed; injunction vacated. No costs, a public question being involved.

T. M. BURNS, P. J., concurred.

HOLBROOK, J. *(dissenting).* This equitable action was commenced by the filing of a complaint on October 3, 1973, by James K. Miller, prosecuting attorney for Kent County, and George A. Weible, City Attorney for the City of Grand Rapids, requesting a temporary and permanent injunction restraining the defendant, its agents, employees, officers, servants and persons in active concert or participation with them from the public exhibition of a certain allegedly obscene motion picture film entitled, "The Devil in Miss Jones". On October 3, 1973, a temporary injunction was issued by the trial court as requested by plaintiffs and an order was issued setting the hearing on the complaint for 4 p.m. October 4, 1973. At the request of counsel for the defendant the court issued an

amended order, dated October 4, 1973, 3 p.m.,
postponing the hearing to October 10, 1973, and an
amended temporary injunction was also signed
and issued at the time. This equitable action was
brought under MCLA 600.2938; MSA 27A.2938,
which provides in pertinent part:

"(1) The chief executive or legal office of any city,
village or charter township or prosecuting attorney of
the county may institute and maintain an action in the
circuit court against any person, firm or corporation to
enjoin and prevent the sale or further sale or the
distribution or further distribution or the acquisition or
possession of any book, magazine, pamphlet, comic
book, story paper, writing, paper, picture, drawing,
photograph, figure or image or any written or printed
matter of an indecent character, which is obscene, lewd,
lascivious, filthy, indecent or disgusting, or which con-
tains an article or instrument of indecent or immoral
use or purports to be for indecent or immoral use or
purpose. * * *

"(4) A preliminary injunction or restraining order
may be issued upon or at any time after the filing of
the complaint. The person, firm or corporation sought
to be enjoined is entitled to a trial of the issues within 1
day after joinder of issue and a decision shall be ren-
dered by the court within 2 days of the conclusion of
the trial.

"(5) If a final order or judgment of injunction is
entered in favor of such officer of the city, village or
charter township and against the person, firm or corpo-
ration sought to be enjoined, the final order or judg-
ment shall contain a provision directing the person,
firm or corporation to surrender to the sheriff of the
county in which the action was brought any of the
matter described in (1) and the sheriff shall be directed
to seize and destroy the same."

On October 9, 1973, the defendant filed a motion
to dismiss the cause on the grounds "that the
statute here involved, MCLA 600.2938; MSA

27A.2938, is not sufficiently specific as written, nor has it been authoritatively construed to permit further proceedings under the holding of the United States Supreme Court in *Miller v California,* 413 US 15; 93 S Ct 2607; 37 L Ed 2d 419 (1973)". A brief in support of the motion to dismiss was filed on October 12, 1973.

On the morning of October 10, 1973, the trial judge in the presence of the attorneys for plaintiffs and defendant viewed the subject film, "The Devil in Miss Jones". The allegations of plaintiffs set forth in the complaint contained a detailed description of the many and varied sexual acts portrayed and acted out by those persons, female and male, who took part in the motion picture, which included fellatio, sexual intercourse, masturbation between females, simulated act of cunnilingus, sexual intercourse and sodomy taking place at the same time, and other sexual acts. These allegations of plaintiffs were admitted by the defendant.

At the hearing held on the afternoon of October 10, 1973, the Honorable John H. Vander Wal made rulings and findings of fact which were incorporated in an order signed and filed on October 12, 1973. Said order made the amended temporary injunction entered at 3 p.m., October 4, 1973, permanent and made the following findings of fact:

"1. That the average person, applying contemporary community standards, would find that the film entitled "The Devil in Miss Jones", taken as a whole, appeals to the prurient interest;

"2. That the film entitled "The Devil in Miss Jones" depicts or describes, in a patently offensive way, sexual conduct, including but not necessarily limited to the following:

"a. patently offensive representations or descriptions of ultimate sex acts, normal and perverted, actual and simulated; and

"b. patently offensive representations or descriptions of masturbation, excretory functions, and lewd exhibition of the genitals;

"3. That the film "The Devil in' Miss Jones", taken as a whole, lacks serious literary, artistic, political or scientific value."

The defendant has stipulated that these findings of fact are correct.

The defendant based its entire argument at the hearing in the trial court upon its contention that the subject statute is unconstitutionally vague and overbroad. Specifically defendant contended there and contends here that its position is tenable, based upon the most recent Supreme Court pronouncements made in the cases of *Miller v California, supra,* and *Paris Adult Theatre I v Slaton,* 413 US 49; 93 S Ct 2628; 37 L Ed 2d 446 (1973). In *Miller,* Mr. Chief Justice Burger, speaking for the Court, stated on pp 23–24 of 413 US; pp 2614–2615 of 93 S Ct; pp 430–431 of 37 L Ed 2d:

"This much has been categorically settled by the Court, that obscene material is unprotected by the First Amendment. *Kois v Wisconsin,* 408 US 229; 92 S Ct 2245; 33 L Ed 2d 312 (1972). *United States v Reidel,* 402 US 351, 354; 92 S Ct 1410; 28 L Ed 2d 813 (1971). *Roth v United States,* 354 US 476, 485; 77 S Ct 1304; 1 L Ed 2d 1498 (1957). 'The First and Fourteenth Amendments have never been treated as absolutes [footnote omitted].' *Breard v Alexandria,* 341 US 622, 642; 71 S Ct 920; 95 L Ed 1233; 35 ALR2d 335 (1951), and case cited. See *Times Film Corp v Chicago,* 365 US 43, 47–50; 81 S Ct 391; 5 L Ed 2d 403 (1961); *Joseph Burstyn, Inc v Wilson,* 343 US 495, 502; 72 S Ct 777; 96 L Ed 1098 (1952). We acknowledge, however, the inherent dangers of undertaking to regulate any form of expression. State statutes designed to regulate obscene materials must be carefully limited. See *Interstate Circuit, Inc v Dallas,* 390 US 676, 682–685; 88 S Ct 1298; 20 L Ed 2d 225 (1968). As a result, we now confine the permissible

scope of such regulation to works which depict or describe sexual conduct. *That conduct must be specifically defined by the applicable state law, as written or authoritatively construed.*[6] [fn 6, "We do not hold, as Mr. Justice Brennan intimates, that all states other than Oregon must now enact new obscenity statutes. Other existing state statutes, as construed heretofore or hereafter, may well be adequate. See *United States v 12 200-Ft Reels of Film,* 413 US 123, 130, n 7; 93 S Ct 2665; 37 L Ed 2d 500 (1973)."] A state offense must also be limited to works which, taken as a whole, appeal to the prurient interest in sex, which portray sexual conduct in a patently offensive way, and which, taken as a whole, do not have serious literary, artistic, political, or scientific value." (Emphasis supplied.)

All of the prerequisites for upholding the trial court's injunction restraining the showing of the film "The Devil in Miss Jones" have been established by the plaintiffs or stipulated to by the defendant, except the one issue concerning the constitutionality of the statute. Under *Miller* and *Paris Adult Theatre I,* the obscene conduct regulated must be specifically defined by the applicable state law as written or authoritatively construed by the courts. The statute, MCLA 600.2938; MSA 27A.2938, purports to define the conduct regulated as follows:

" * * * To enjoin and prevent the sale or further sale or the distribution or further distribution or the acquisition or possession of any book, magazine, pamphlet, comic book, story paper, writing, paper, picture, drawing, photograph, figure or image or any written or printed matter of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting, *or which contains an article or instrument of indecent or immoral use or purports to be for indecent or immoral use or purpose.*" (Emphasis supplied.)

The defendant asserts that the statute as writ-

ten does not specifically define the conduct pro-
scribed by *Miller.* The film contains pictures of a
dildo (an article or instrument) being physically
used, and certainly for indecent purposes. We will
now consider the next test, *i.e.,* have our state's
obscenity statutes been construed authoritatively
so as to satisfy the *Miller* requirements on specific-
ity?

In the case of *People v Villano,* 369 Mich 428,
437; 120 NW2d 204, 208 (1963), our Supreme Court
stated:

"The further objections raised as to the alleged uncer-
tainty and vagueness of the statute in dealing with
obscenity and other like terms would seem to be with-
out merit in view of the language of the court in *Roth v
United States,* 354 US 476; 77 S Ct 1304; 1 L Ed 2d
1498 (1957)."

Our Supreme Court in *Villano* has authoritatively
construed one of the state obscenity statutes and
adopted the definitions of the word obscene and
other like terms stated in *Roth,* in denying defend-
ant's claim that the subject state statute was
uncertain and vague. Our Court of Appeals has
likewise adopted the definition of obscenity as
contained in *Roth* in authoritatively construing
the subject Michigan civil obscenity statute in the
case of *Wayne County Prosecutor v Doerfler,* 14
Mich App 428, 459–460; 165 NW2d 648, 663 (1968),
wherein Judge JOHN W. FITZGERALD (now an Asso-
ciate Justice of the Supreme Court) speaking for
the Court stated:

"Defendants urge one rather novel ground of appeal
in alleging that the Michigan civil obscenity statute, on
its face and as applied in this case, is so vague and
uncertain as to render it unconstitutional. Their partic-
ular suggestion in this regard is that this Court com-

pare the three categories which resulted from the jury's efforts, more specifically, the 141 magazines found obscene and the 33 on which they could not agree. They suggest that there are no significant differences and, above all, none of constitutional dimensions.

"Such a test is hardly a test of vagueness. The further suggestion that the word 'obscene' is, in and of itself, too vague, falls also. As stated in 5 ALR3d 1214, citing *Roth:*

" 'The general view is that, applied under the proper constitutional standards, the term "obscene" is sufficiently definite to preclude a criminal statute or ordinance dealing with obscenity from being held invalid on the ground of vagueness.'

"The definition of 'obscenity' established in *Roth* has become the standard for the country and this statute cannot be said to be vague with such a standard extant."

Our Court of Appeals further explained its position on the issue discussed in the case of *People v Wasserman,* 27 Mich App 16, 20–21; 183 NW2d 313, 315–316 (1970), wherein it is stated:

"No objections have been made to the instructions of the court to the jury and therefore we consider the matter properly submitted for determination. In *Roth v United States, supra,* the law on obscenity is thoroughly considered and is applicable to the case herein. Obscenity is not protected by the First Amendment to our Federal Constitution. A reiteration of the story in question in this opinion would not be of benefit to the decision nor to those who might read it. Suffice it to say that we agree with the trial judge in his ruling on the motion for a new trial wherein he stated:

" 'In the opinion of the court there was ample room for the decision of the jury on the facts.'

"In the case of *Memoirs v Massachusetts,* 383 US 413; 86 S Ct 975; 16 L Ed 2d 1 (1966), obscenity was defined as follows at p 418:

" 'We defined obscenity in *Roth* in the following terms: "Whether to the average person, applying con-

temporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." 354 US, at 489; 77 S Ct at 1311; 1 L Ed 2d at 1509. Under this definition, as elaborated in subsequent cases, three elements must coalesce: it must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value.' "

The Court in the case of *Wayne County Prosecutor v Trans-Lux Michigan Co,* 37 Mich App 644, 646; 195 NW2d 311, 312 (1972), authoritatively construed the subject statute by limiting its effect, as stated:

"For these reasons we hold that the learned trial judge erred in dismissing plaintiff appellant's action on the ground of the unconstitutionality of the statute for overbreadth. MCLA 600.2938; MSA 27A.2938, as we read it, does not proscribe personal acquisition or possession. Impliedly, as well as by its own terms, it is confined to acquisition and possession for sale or distribution."

In *Roth* the words obscene and obscenity were defined at 354 US 487; 77 S Ct 1310; 1 L Ed 2d 1508, as follows:

"However, sex and obscenity are not synonymous. Obscene material is material which deals with sex in a manner appealing to prurient interest." ·

In footnote 20, obscene material is further defined as follows:

" 'A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, *i.e.,* a shameful or morbid interest in nudity, sex, or excretion,

and if it goes substantially beyond customary limits of candor in description or representation of such matters.' "

It can be said without question that our Supreme Court and Court of Appeals have authoritatively construed our obscenity civil and criminal statutes so as to incorporate therein the definition of the words obscene and obscenity as defined in *Roth.* It is well to point out that this Court also in the case of *Grand Rapids City Attorney v Bloss,* 17 Mich App 318, 334–335; 169 NW2d 367, 373–374 (1969), authoritatively construed the subject statute by adopting the ruling of the Honorable John T. Letts, circuit judge, in his written opinion in the case as follows:

" 'This court adopts and follows the *"Roth* test" at least preliminarily, in arriving at a decision as to whether the exhibits before this court are obscene, *viz.,* whether to the average person, applying contemporary community standards, the dominant theme of the material, taken as a whole, appeals to prurient interest. *Roth v United States, supra.* Under this definition, as elaborated in subsequent cases, three elements must coalesce: It must be established that (a) the dominant theme of the material taken as a whole appeals to a prurient interest in sex; (b) the material is patently offensive because it affronts contemporary community standards relating to the description or representation of sexual matters; and (c) the material is utterly without redeeming social value. *Memoirs v Massachusetts,* 383 US 413; 86 S Ct 975; 16 L Ed 2d 1 (1966).

" 'In *United States v 25,000 Magazines, Entitled "Revue",* 254 F Supp 1014 (1966), the following language is pertinent to this case:

" ' "(2) A. Not all photographs of nude women are obscene, even though the focus is on the breasts or the pubic area. Such photographs are not rendered obscene merely because the models are kneeling or lying down, or handling scarves, veils or other properties, or posed

in unusual or vulgar positions, if their positions and expressions are not lewd or enticing. The inclusion of a nude man or men in such photographs does not render them obscene unless some type of sexual activity is depicted or suggested.

" ' "(3) B. Among the factors which may render such photographs obscene and which should be considered by enforcement authorities are: (1) that the model is on a bed or a bed is part of the picture; or (2) that the woman is in an enticing or lewd position; or (3) that the pubic area is bare and such clothing as the woman wears tends to accentuate the focus on the pubic area; or (4) that the pose overaccentuates the pubic area; or (5) that the woman is removing her final garment suggestively; or (6) that properties are used in such a way as to heighten prurient interest; or (7) that a man in the picture has an erection or a partial erection or any type of sexual activity is suggested or depicted.

" ' "(4) The dominant theme of the material taken as a whole must be considered, but one or more obscene photographs may heighten the prurient appeal of other photographs in such a magazine." ' "

This case was appealed to our Supreme Court and leave was denied in 383 Mich 754 (1969), and it was appealed to the United States Supreme Court and reversed on other grounds *sub nom Bloss v Dykema*, 398 US 278; 90 S Ct 1727; 26 L Ed 2d 230 (1970).

As a result of the landmark United States Supreme Court decisions issued on June 21, 1973, in the obscenity cases of *Miller, supra; Paris Adult Theatre I, supra,* and six others, several rulings followed on June 25, 1973, including *Michigan v Bloss,* 413 US 909; 93 S Ct 3060; 37 L Ed 2d 1021 (1973), wherein the Court vacated a decision of the Michigan Supreme Court in *People v Bloss,* 388 Mich 409; 201 NW2d 806 (1972), and remanded the case to the Michigan Supreme Court for further consideration in light of *Miller* and *Paris Adult*

*Theatre I* and other cases. In *Bloss,* 388 Mich 409; 201 NW2d 806, the defendants were convicted of selling obscene literature, the Court of Appeals affirmed, and the Supreme Court reversed basing its decision upon *Redrup v New York,* 386 US 767; 87 S Ct 1414; 18 L Ed 2d 515 (1967). Under the decision of *Miller, supra, Redrup* is no longer the law. The remand to the Michigan Supreme Court appears to have been made for our Supreme Court to determine whether the statute as written or as authoritatively construed would pass muster under the requirements of *Miller.*

Another similar obscenity case from the state of Virginia, *Price v Virginia,* 413 US 912; 93 S Ct 3049; 37 L Ed 2d 1031 (1973), was remanded to the Virginia Supreme Court for further consideration in light of *Miller* and the other companion cases. In that case on remand, *Price v Commonwealth,* 214 Va 490, —; 201 SE2d 798, 800–801 (1974), the Virginia Supreme Court affirmed the defendant's conviction for exhibiting an obscene motion picture, ruling that the statute was not void for vagueness or overbreadth, and the movie was obscene. The Court therein stated in part:

"The main thrust of Price's argument is that the Virginia obscenity statute is void for vagueness or overbreadth under part (b) of the *Miller* test because the statute did not define with specificity the conduct which a work must portray to be held obscene. In *Miller* the Supreme Court stated that the conduct whose portrayal is proscribed must be specifically defined by statute, as written or as authoritatively construed. The Court amplified this requirement by giving examples of descriptions that are sufficiently specific:

" '(a) Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated.

" '(b) Patently offensive representations or descrip-

tions of masturbation, excretory functions, and lewd exhibition of the genitals.' 413 US, at 25; 93 S Ct, at 2613; 37 L Ed 2d, at 431.

"The Virginia definition of obscenity is found in Code § 18.1-227 (Cum Supp 1971), which provides:

" 'The word "obscene" * * * shall mean that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest, that is, a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters.' * * *

"We also conclude that the Virginia obscenity law is not void for vagueness. A statute regulating obscene materials is not void for vagueness if it provides 'fair notice to a dealer in such materials that his public and commercial activities may bring prosecution.' *Miller v California,* 413 US at 27; 93 S Ct at 2616; 37 L Ed 2d at 433. All that is required is that the language of the statute 'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' *Roth v United States,* 354 US 476, 491; 77 S Ct 1304, 1312; 1 L Ed 2d 1498; 1511 (1957). Thus, in *Roth* the Court upheld over a challenge of vagueness a federal statute making punishable the mailing of material that is 'obscene, lewd, lascivious, or filthy * * * or other publication of indecent character.' In *United States v 12 200-Ft Reels of Super 8mm Film,* 413 US 123, 130, n 7; 93 S Ct 2665, 2670; 13 L Ed 2d 500, 507 (1973), the Court left open the issue of whether the words 'obscene', 'lewd', 'lascivious', 'filthy', 'indecent' or 'immoral' raised a serious doubt concerning the vagueness of a federal obscenity statute.

"The Virginia obscenity statute, as construed, gives fair notice of the meaning of obscenity. We believe that a person of ordinary understanding would have no difficulty in determining what sorts of material would be regarded as obscene under the statute."

The Virginia statute is nearly identical with the Michigan statute as authoritatively construed by incorporating in the statute the definitions of ob-

scene and obscenity in the *Roth* case.[1] The Michigan definition of obscene material per *Roth* is material which deals with sex in a manner appealing to prurient interest,—"A thing is obscene if, considered as a whole, its predominant appeal is to prurient interest, *i.e.,* a shameful or morbid interest in nudity, sex or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters."

In this writer's opinion we can and ought to follow the precedent of our sister state of Virginia and rule that our subject civil obscenity statute is not unconstitutional as being vague or overbroad, and further, that the statute as authoritatively construed sufficiently describes the proscribed conduct, under *Miller.*

Defendant claims that the proceedings instituted against him in the case at bar improperly deprived him of fair notice or due process.

The case of *State v J-R Distributors, Inc,* 82 Wash 2d 584, 600–601; 512 P2d 1049, 1059–1060 (1973), enlightens us further on the issue raised by the defendant in the instant case. It is stated in part as follows:

"Next it is asserted that RCW 9.68.010 is unconstitutional because the word 'obscene' is not defined and thus is vague and overbroad. It is said that a man of ordinary understanding and intelligence could not divine the meaning of 'obscene' because it is not self-defining. The argument is based principally upon a mistaken premise that *Roth* and its standard of obscenity are passé.

"To the contrary, the import of *Roth* is not a thing of

[1] The Virginia statute defined the word obscene as "that which considered as a whole has as its dominant theme or purpose an appeal to prurient interest, that is, a shameful or morbid interest in nudity, sex, or excretion, and if it goes substantially beyond customary limits of candor in description or representation of such matters." *Price v Commonwealth, supra,* 219 Va 490; 201 SE2d 800.

the past. Rather, it remains viable and basic to the recent holdings of the United States Supreme Court in *Miller v California, supra; Paris Adult Theatre I v Slaton, supra;* and *Kaplan v California,* 413 US 115; 93 S Ct 2628; 37 L Ed 2d 492 (1973). Further, it is important to note historically that *United States v Reidel,* 402 US 351; 91 S Ct 1410; 28 L Ed 2d 813 (1971), reaffirmed the vitality of *Roth* as follows, at page 354; 91 S Ct 1412; 28 L Ed 2d 816, 817:

" *'Roth* has not been overruled. It remains the law in this Court and governs this case. * * *

" *'Stanley v Georgia,* 394 US 557; 89 S Ct 1243; 22 L Ed 2d 542 (1969), compels no different result. * * * The Court [in *Stanley]* made its point expressly: *"Roth* and the cases following that decision are not impaired by today's holding. As we · have said, the states retain broad power to regulate obscenity; that power simply does not extend to mere possession by the individual in the privacy of his own home." * * * *Nothing in Stanley questioned the validity of Roth insofar as the distribution of obscene material was concerned.'* (Italics in original.)

"In *Roth* the United States Supreme Court considered carefully whether the word 'obscene' is unconstitutionally vague and found that it .was not. *Accord, Mishkin v New York,* 383 US 502; 86 S Ct 958; 16 L Ed 2d 56 (1966). According to *Roth* the only requirement is that the language convey a 'sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.' *Roth v United States,* 354 US 476, 491; 77 S Ct 1304, 1312; 1 L Ed 2d 1498, 1511 (1957). See, also, *State v Oyen,* 78 Wash 2d 909; 480 P2d 766 (1971) (judgment vacated and case. remanded on other grounds, 408 US 933; 92 S Ct 2846; 33 L Ed 2d 745 [1972]). We hold that the word 'obscene', as used in RCW 9.68.010 is not unconstitutionally vague when considered within the light of the *Roth-Miller* test. According to the *Roth-Miller* test the scope of regulation is confined to works which depict or describe sexual conduct. A state offense must also be limited to. works which, taken as a whole, appeal to the prurient interest in sex, portraying sexual conduct in a way that is patently offensive, and which taken as a whole does not

have a serious literary, artistic, political, or scientific value." (Emphasis supplied.)

This writer agrees with the ruling and reasoning in *State v J-R Distributors, Inc, supra.*

Defendant in the instant case received prior notice of the claims of the plaintiffs by reason of the service on it of the complaint which was duly filed in the trial court. The complaint contained specific descriptions of the material claimed to be proscribed by law. Defendant was given an evidentiary adversary hearing wherein all issues of fact and law were considered by the court. In *Paris Adult Theatre I, supra,* p 55; 93 S Ct 2634; 37 L Ed 2d 455, the Court held: "[S]uch a procedure provides an exhibitor or purveyor of materials the best possible notice, prior to any criminal indictments, as to whether the materials are unprotected by the First Amendment and subject to state regulation". In *Kingsley Books, Inc v Brown,* 354 US 436, 442; 77 S Ct 1325, 1328; 1 L Ed 2d 1469, 1474–1475, it is stated:

"Instead of requiring the bookseller to dread that the offer for sale of a book may, without prior warning, subject him to a criminal prosecution with the hazard of imprisonment, the civil procedure assures him that such consequences cannot follow unless he ignores a court order specifically directed to him for a prompt and carefully circumscribed determination of the issue of obscenity. Until then, he may keep the book for sale and sell it on his own judgment rather than steer 'nervously among the treacherous shoals.' "

The defendant in the instant case was not faced with a criminal charge that would threaten a deprivation of liberty or property, although the action if the injunction had been operative might well have prevented defendant from *realizing*

*profits* from the showing of the obscene movie which apparently is the *motivating force* for producing and showing hardcore pornography in many of the movie houses of our state and nation. Such commercial exploitation of hardcore pornography should hardly be protected material under the First Amendment.

Our nation is nearly 200 years of age and has grown to be a great nation because of the dedication of its citizens to high ideals, stability and morality. These three virtues are minimum requirements of a people destined to be and remain great. The walls protecting these three virtues in our City of America are being assaulted by the purveyors of pornography. These commercial peddlers of lustful materials ply their wares in order to selfishly accumulate easy profits and wealth. The price we are required to pay may not just be in money, but it also may cost the loss of the soul of America. If these walls protecting our City crumble and decay because of inattention and indifference, it is to be hoped that another Nehemiah[2] will be here to lead us in the rebuilding of the walls of this important City housing our high ideals, stability and morality.

The language of MCLA 600.2938; MSA 27A.2938 as heretofore authoritatively construed in the cases of *People v Villano; Wayne County Prosecutor v Doerfler; Grand Rapids City Attorney v Bloss; People v Wasserman* and *Wayne Prosecutor v Trans-Lux, supra,* was sufficient to meet the requirements of notice. The language of the statute as construed conveys a sufficient and definite warning as to the proscribed conduct when measured by common understanding and practices. This is all that is necessary. *Price v Common-*

[2] Nehemiah, Chapters 1 and 2.

*wealth, supra.* The definition of obscenity in *Roth* was and is still a valid and viable definition which satisfies the requirements of *Miller, supra.*

Most of the courts that have thus far dealt with the specificity requirements contained in *Miller* have determined their statutes as written or as authoritatively construed to meet the *Miller* standards, thus saving even the broadest of obscenity statutes, *viz.: Price v Commonwealth, supra; J-R Distributors, Inc, supra; Rhodes v State,* 283 So 2d 351 (Fla, 1973); *State ex rel Keating v "Vixen",* 35 Ohio St 2d 215; 301 NE2d 880 (1973); *Jenkins v State,* 230 Ga 726; 199 SE2d 183 (1973); *Detco, Inc v McCann,* 365 F Supp 176 (ED Wis, 1973); *United States v One Reel of Film,* 481 F2d 206 (CA 1, 1973); *United States v Thevis,* 484 F2d 1149 (CA 5, 1973); *Richards v State,* 497 SW2d 770 (Tex Civ App, 1973); *City of Tacoma v Lewis,* 9 Wash App 421; 513 P2d 85 (1973); *State ex rel Sensenbrenner v Book Store,* 35 Ohio St 2d 220; 301 NE2d 695 (1973); *United States v Orito,* 413 US 139; 93 S Ct 2674; 37 L Ed 2d 513 (1973); *Orito v Powers,* 479 F 2d 435 (CA 7, 1973). The only decisions contra have been those rendered by the states of Indiana and Louisiana; *Mohney v State,* 300 NE2d 66 (Ind, 1973); *Stroud v State,* 300 NE2d 100 (Ind, 1973); *State v Shreveport News Agency,* 287 So 2d 464 (La, 1973); *Gulf States Theatres v Richardson,* 287 So 2d 480 (La, 1973).

A very important and similar case from our sister state of New York is strong authority for upholding the instant injunction issued out of the trial court. In *Redlich v Capri Cinema, Inc,* 43 AD2d 27; 349 NYS2d 697 (1973), corporation counsel for the City of New York brought a civil action to enjoin the showing of obscene films. Plaintiff moved for a temporary injunction and defendant

cross-moved for a summary judgment. The Supreme Court (trial court) denied the motion for injunction and granted cross-motion and dismissed the complaint. Plaintiff appealed. The Supreme Court, Appellate Division, reversed and held that in view of the likelihood of success of plaintiff and fact that failure to grant preliminary injunction would cause great public harm and constitute unwarranted rejection of legislative intent, preliminary injunction should have been granted. The statute conferring upon the trial court jurisdiction to enjoin distribution of obscene motion pictures is not unconstitutionally overbroad. The pertinent portions of the opinion are stated at 43 AD2d 29; 349 NYS2d 700–701:

"And it is noteworthy that the court, in *Miller,* in describing the material it was considering, referred to it as 'pornography', *i.e.,* obscene material dealing with sex, which is what the pictures before us indisputably are.

"Yet Special Term finds CPLR 6330 'overbroad' in its provisions, and thus unconstitutional. We feel Special Term erroneously overlooked the invitation of the Supreme Court in *Miller,* extended to the State courts, that they fill in any statutory interstices or rectify any deficiencies, by their own authoritative judicial constructions. That is why the Supreme Court remanded any number of cases, including *People v Heller (Heller v New York,* 413 US 483; 93 S Ct 2789; 37 L Ed 2d 745 [1973]) to the various State courts, that the State courts could have the opportunity to construe their own existing statutes so as to determine whether, as so construed, they complied with the standards of *Miller.* See *Alexander v Commonwealth of Virginia,* 413 US 836; 93 S Ct 2803; 37 L Ed 2d 993 (1973); also, *United States v Thirty-Seven Photographs,* 402 US 363; 91 S Ct 1400; 28 L Ed 2d 822 (1971); *United States v Twelve 200-Ft Reels of Super 8mm Film,* 413 US 123, 130, n 7; 93 S Ct 2665, 2670; 37 L Ed 2d 500, 507 (1973). *Miller* specifically held that it did not require a State to enact new obscenity

laws, but that the existing State statutes 'as construed heretofore or hereafter' may well be adequate. In *Paris Adult Theatre I v Slaton,* the Supreme Court said (413 US 49 at p 69; 93 S Ct 2628 at p 2642; 37 L Ed 2d 446 at p 464 [1973]): 'In light of these holdings, nothing precludes the State of Georgia from the regulation of the allegedly obscene materials, * * * provided that the applicable Georgia law, as written · or authoritatively interpreted by the Georgia courts, meets the First Amendment standards set forth in *Miller v California'.*

"In holding, as we do, that the New York courts should synthesize by judicial construction the require- ments of the *Miller* standards .into CPLR 6330, we note also that in Penal Law 235.00 [which is referred to in CPLR 6330 for an alternative description of obscene sexual conduct], most of the language is the same as in the California statute considered in *Miller* and also in the Georgia statute involved in *Paris Adult Theatre I v Slaton, supra.* We note also that in considering the New York statute in *People v Heller, supra,* the Supreme Court had an opportunity to declare it unconstitutional. But it did not do so.

"Finally, we note that the constitutionality of the injunctive relief set forth in Section 22-A of the Code of Criminal Procedure, the predecessor to CPLR 6330, was upheld in *Brown v Kingsley .Books,* 1 NY2d 177; 151 NYS2d 639; 134 NE2d 461 (1956), which the Supreme Court subsequently affirmed *sub nom Kingsley Books v Brown,* 354 US 436; 77 ·S Ct 1325; 1 L Ed 2d 1469 (1957).

"And by stepping into the breach and saving the statute by incorporating into it the *Miller* postulates, we do so in the light of settled law that (a) the courts may interpret statutory language so as to preserve the validity of a statute. As Chief Judge Fuld said in *Matter of Bell v Waterfront Commission,* 20 NY2d 54, 62; 281 NYS2d 753, 760; 228 NE2d 758, 763 (1967):

" 'In the past, when faced with the choice of declaring a statute unconstitutional under the First Amendment or interpreting the legislation in such a way as to supply a missing constitutional safeguard, neither this court nor the Supreme Court has hesitated "to embrace

[the course] which will preserve [the statute's] validity" ';

"(b) CPLR 6330 is not a criminal statute.[3] It is remedial only; it looks to a civil injunction and provides the mechanism to prevent future misconduct. It is to be liberally construed. McKinney's Statutes, Section 257. (c) We are considering a temporary injunction only. One of the principal yardsticks is the likelihood of success. Since these films are unabashedly pornographic, utterly without redeeming social value, representing the very nadir of decadence, the preponderation of success is overwhelmingly in favor of the plaintiffs, and the preliminary injunctions should have been granted."

MCLA 600.2938; MSA 27A.2938 is not a criminal statute but rests in equity. It is remedial only and should be liberally construed. *Shannon v People,* 5 Mich 36 (1858); *DeVries v Conklin,* 22 Mich 255 (1871); *Oakland County Treasurer v Auditor General,* 292 Mich 58; 290 NW 327 (1940); *Steele v Wilson,* 29 Mich App 388; 185 NW2d 417 (1971); *Lisee v Secretary of State,* 32 Mich App 548; 189 NW2d 50 (1971), *aff'd* 388 Mich 32; 199 NW2d 188 (1972); *People v Bandy,* 35 Mich App 53; 192 NW2d 115 (1971). It looks to a civil injunction and provides a method to prevent future misconduct.

The law in Michigan is the same as in New York, and our courts under the Michigan Constitution are duty bound to preserve the laws of this state and to that end to construe them if possible so they can conform to Federal and state constitutional requirements. This mandate has previously been accomplished by our courts engrafting on our obscenity statutes the definition of obscenity as

---

[3] CPLR 6330 confers upon the Supreme Court (trial court) jurisdiction to enjoin the distribution of a motion picture "of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting". Our subject statute reads in part: "matter of an indecent character, which is obscene, lewd, lascivious, filthy, indecent or disgusting", and reads in pertinent part as the New York statute.

contained in *Roth, supra; Villano; Doerfler; Grand
Rapids City Attorney; Wasserman;* and *Trans-Lux,
supra.* This policy has very recently been followed
by the Supreme Court in relation to our state
abortion statute. *People v Bricker,* 389 Mich 524;
208 NW2d 172 (1973). In the case of *People v
Adams,* 389 Mich 222, 229, 230; 205 NW2d 415,
418, 419 (1973), our Supreme Court in construing
the kidnapping statute, MCLA 750.349; MSA
28.581, judicially read into the statute the require-
ment of asportation so as to comply with due
process, and stated in pertinent part:

"Judge LEVIN for a divided Court held the statute
unconstitutionally overbroad unless limitations were
interpolated to confine its operative effect. He added
this limitation by construing the statute to require an
asportation so as to differentiate the offense from false
imprisonment. * * *

"We agree with Judge LEVIN's thoughtful and careful
analysis that the sweep of this part of the statute is so
broad that it requires the interpolation of the historical
concept of asportation to render it constitutional, and it
is our duty to do so. See *Michigan Towing Association,
Inc v Detroit,* 370 Mich 440, 456; 122 NW2d 709, 715–
716 (1963); *State Bar of Michigan v Lansing,* 361 Mich
185, 195; 105 NW2d 131, 136 (1960). Failure to do so
would result in denial of due process. *Giaccio v Pennsyl-
vania,* 382 US 399; 86 S Ct 518; 15 L Ed 2d 447 (1965).

"Where a kidnapping statute does not in terms re-
quire asportation or its equivalent, such a requirement
has not infrequently been judicially read into and made
a part of the definition of the crime."

Likewise this Court should read into the subject
statute the standard of *Miller v California, supra.*

This Court accepts the invitation of the Supreme
Court in *Miller* to fill in any statutory interstices
and rectify any deficiencies in MCLA 600.2938;
MSA 27A.2938 by judicially construing and adopt-

ing word for word the requirements of the *Miller* standard for an alternative description of proscribed obscene conduct.

*Arguendo,* this equitable injunctive proceeding to prevent future misconduct on the part of the defendant was commenced on October 3, 1973, more than three months after the United States Supreme Court decided *Miller v California, supra,* and the other companion obscenity cases.

The plaintiffs herein relied on *Miller,* and it would appear from the following comments that they were correct. The case of *United States v Orito,* 413 US 139, 145; 93 S Ct 2674, 2679; 37 L Ed 2d 513, 519 (1973), involved an indictment charging Orito with knowingly transporting obscene materials by common carrier in interstate commerce in violation of 18 USC 1462.[4] The District Court granted Orito's motion to dismiss; the Supreme Court reversed, stating in part:

"As this case came to us on the District Court's summary dismissal of the indictment, no determination of the obscenity of the material involved has been made. Today, for the first time since *Roth v United States,* 354 US 476; 77 S Ct 1304; 1 L Ed 2d 1498 (1957), we have arrived at standards accepted by a majority of this Court for distinguishing obscene material, unprotected by the First Amendment, from protected free speech. See *Miller v California, ante,* 413 US 15, 23–25; 93 S Ct 2607, 2615; 37 L Ed 2d 419, 430–431 (1973); *United States v 12 200-Ft Reels of Super 8mm Film, ante,* 413 US 123, 130 n 7; 93 S Ct 2665, 2670; 37 L Ed 2d 500, 507 (1973). The decision of the District Court is

---

[4] 18 USC 1462 [18 USCA 1462] provides in pertinent part:

"Whoever brings into the United States, or any place subject to the jurisdiction thereof, or knowingly uses any express company or other common carrier, for carriage in interstate or foreign commerce—

"(a) any obscene, lewd, lascivious, or filthy book, pamphlet, picture, motion-picture film, paper, letter, writing, print, or other matters of indecent character; * * * ."

therefore vacated and the case is remanded for reconsideration of the sufficiency of the indictment in light of *Miller v California, supra; United States v 12 200-Ft Reels, supra,* and this opinion."

By so doing the Supreme Court upheld the simple and unspecific obscenity statute set forth in the footnote.

In the case of *United States v Thevis,* 484 F2d 1149 (CA 5, 1973), the Court was faced with a similar problem as was the Supreme Court in *Orito.* Therein defendants were convicted of transporting obscene material by common carrier in interstate commerce, contrary to the same 18 USCA 1462. The Court stated in part at pp 1151–1152, 1155:

"Subsequent to oral argument, the Supreme Court announced five opinions in which a majority of that Court agreed on concrete guidelines to isolate materials depicting or describing 'patently offensive "hard core" sexual conduct' from expression protected by the First Amendment. *Miller v California,* 413 US 15, 27; 93 S Ct 2607, 2616; 37 L Ed 2d 419, 432 (1973); *Paris Adult Theatre I v Slaton,* 413 US 49; 93 S Ct 2628; 37 L Ed 2d 446 (1973); *United States v Orito,* 413 US 139; 93 S Ct 2674; 37 L Ed 2d 513 (1973); *Kaplan v California,* 413 US 115; 93 S Ct 2680; 37 L Ed 2d 492 (1973); *United States v 12 200-Ft Reels of Super 8mm Film,* 413 US 123; 93 S Ct 2665; 37 L Ed 2d 500 (1973).

"In light of these opinions, appellant has filed a supplemental brief urging that the *Memoirs* standard can no longer be used for testing obscenity. Further, in this brief it is argued that the *Miller* standard is also inapplicable, for two reasons: (1) that application of the new standard would be violative of the Ex Post Facto clause of Article I, § 9, United States Constitution; and (2) that in any case the material in question would be protected under *Miller* because 18 USCA § 1462, as written or authoritatively construed, does not specifically define that sexual conduct whose depiction or

description is thereby regulated. In essence, appellants are contending, on the authority of *Miller,* that the Supreme Court has eliminated all obscenity laws that would have been otherwise applicable to transactions occurring prior to June 21, 1973, and that the Court has also eliminated all laws controlling obscenity after that date, save as legislatures enact or courts construe statutes to meet the *Miller* requirements. In sum, claim the appellants, we are without power to test the materials for obscenity under any standard. We reject this broad contention. We do not perceive that the Supreme Court, either deliberately or unwittingly, has stripped the nation of laws against obscenity in any such manner.

"For reasons to be discussed in Part II of this opinion, we hold that the twelve magazines are to be tested for obscenity under both standards, with the appellants in every instance to receive the benefit of the most favorable standard.

\*   \*   \*

"[7] Therefore, before we consider the question of obscenity *vel non,* and because we do apply the *Miller* standard, we must address ourselves to the question whether 18 USCA § 1462 can satisfy the *Miller* requirement that the applicable statute specifically define sexual conduct whose depiction or description is thereby restricted. This assumes, of course, that the Supreme Court intended for appellants to have the benefit of the *Miller* standard.

"The statute under which the appellants were indicted proscribes interstate transportation of 'obscene, lewd, lascivious, or filthy' materials. On its face, this statutory terminology does not contain the specifics required by *Miller.* The same, of course, might have been said of the statute while *Memoirs* controlled the definition of obscenity. The difference is that *Miller* requires that elements of the definition be a part of the statute. This requirement may be met, however, according to *Miller,* by authoritative judicial construction. Further, in *12 200-Ft Reels, supra,* at fn 7, the Court states that it is 'prepared to construe such [federal statutory] terms as limiting regulated material to pat-

ently offensive representations or descriptions of that specific "hardcore" sexual conduct given as examples in *Miller*. * * * ' We Believe that this answers the question and that the definition of *Miller* is a gloss properly added to § 1462. The effect is to substitute the *Miller* definition of 'obscene' for the *Memoirs* definition. On this basis we proceed to an examination of the materials which underlie the indictment."

The Court then went on to affirm the convictions as to six of the magazines and reversed as to the other six magazines on the basis that defendant was entitled to the benefit of the *Memoirs* standard, as well as the *Miller* standard.

To this writer there is no question but that the film, "The Devil in Miss Jones", is proscribed by our statute whether tested under the *Miller* or *Roth-Memoirs* standards.

The granting of the injunction by the Kent County Circuit Court should be affirmed and the stay of proceedings terminated with costs to plaintiffs. This writer so votes.